Filed 4/4/13  Alamo Group IX v. Tabaie CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ALAMO GROUP IX, LLC,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BEHNAM TABAIE,<br><br>        Defendant and Appellant. | A133376<br><br>(Contra Costa County<br>Super. Ct. No. MSC09-01657) |

Behnam Tabaie was sued by Alamo Group IX, LLC (Alamo) and obtained a judgment in his favor following a bench trial.  He then sought an award of attorney fees on the basis that he had been required to prove facts at trial that Alamo had denied in response to his requests for admissions (Code Civ. Proc., § 2033.420).[1]  The court denied the motion.  Tabaie has not provided a sufficient record to establish error by the trial court and we affirm.

## I.    BACKGROUND

In June 2009, Alamo filed a complaint against Kassra Tavakoli and several Doe defendants for breach of contract, breach of fiduciary duty, conversion, fraud, money had and received, and an accounting.  Alamo, whose managing member is Donald Gaube, alleged that it entered into a written agreement with Tavakoli and the Doe defendants in 2007 to form Reno Investors, LLC (Reno Investors), which would operate a furniture store leased from another entity (Lessor) managed by Gaube.  Pursuant to an alleged oral

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

1

agreement, Alamo loaned Tavakoli[2] $500,000 to purchase store inventory in the form of a capital contribution to Reno Investors, with the understanding that Alamo would transfer ownership units in Reno Investors to Tavakoli as Tavakoli repaid the loan, until Tavakoli owned the company in full. Alamo alleged that Tavakoli breached this oral agreement, failed to account for the $500,000 loaned by Alamo, failed to repay the loan, failed to pay rent to Lessor, and abandoned the company. Alamo alleged that it was damaged as a result of *defendants'* actions and that all defendants were therefore liable under all five cause of action.

According to the register of actions, Tavakoli did not answer the complaint and a default was entered against him. The register of actions also reflects that Alamo filed amended complaints naming Tony Rashidi and Tabaie as Doe defendants. Rashidi failed to answer and a default was entered against him. Tabaie answered with a general denial, and also filed a cross-complaint against Gaube and Rashidi. Neither the amended complaints naming Rashidi and Tabaie as defendants nor the cross-complaint is in the appellate record.

A court trial on Alamo's claims against Tabaie took place over six days in March 2011. Tabaie has elected to provide for the appellate record only a single portion of the reporter's transcript of that trial—the testimony of Donald Gaube. In the partial transcript, Gaube testifies that he is the managing member of FADCO E-1 Associates (Lessor), a $20 billion investment fund that acquired leasehold interests in 87 properties, including a retail location in Reno, Nevada that was operated as a successful furniture store from 1997 to about 2007. When the owner of that store decided to retire, Lessor sought a new tenant and approached Tavakoli, who was already leasing two other Lessor-owned locations for a mattress business and a furniture store. Tavakoli was interested in the new opportunity but said he needed financing assistance. Gaube agreed to form a new entity (Reno Investors) with Tavakoli and to invest $500,000 to help get the business

---

[2] Alamo alleges an unspecified "defendant" received the loan. The only defendant specifically named in the complaint is Tavakoli, and Gaube's testimony was that the money was provided to Tavakoli.

going. They executed a written operating agreement for Reno Investors, and Reno Investors signed a sublease agreement with Lessor. Reno Investors was to use income from the store first to pay rent and other operating expenses, and second to repay the $500,000 loan with interest. No rent or loan payments were ever made. Eventually, Tavakoli introduced Gaube to Tabaie, who Gaube understood "was going to be coming in as [Tavakoli's] partner or agent to operate the store."[3] In subsequent conversations, Tabaie advised Gaube that the business was not profitable and had no money to pay rent or repay the loan. Beginning in July 2008, Tabaie sent financial statements to Gaube showing an absence of profits. In 2009, Lessor lost its leasehold interest in the Reno property because of its failure to pay rent to the property owners, which in turn was caused by Reno Investors' failure to pay rent to Lessor. In July 2009, Gaube discovered through a store employee that the store had actually been making a large profit.

During trial, Tabaie (in the words of the trial court) "moved for judgment in his favor on the grounds that this lawsuit was brought by [Alamo] who was not the real party in interest and thus had no standing to bring this action; that, in fact, [Reno Investors] is the proper party plaintiff." In May 2011, the court entered the following judgment: "1. Original Plaintiff [Alamo] is determined not to be the real party in interest and thus lacked standing to bring this lawsuit. However, based on [sections] 473 and 576, Plaintiff shall be allowed to file an amended complaint to conform to proof elicited during the trial, substituting [Reno Investors] as the proper party plaintiff. [¶] 2. Defendant Tabaie shall have 30 days from the date of this Order to respond to the Amended Complaint. Without a predetermination on the merits, Defendant is not precluded from filing a motion for change of venue or other motions which may be filed with an initial response to a complaint. [¶] 3. Judgment is entered in favor of Defendant Tabaie and against Plaintiff [Alamo]."

---

[3] For a period of time, Gaube could not locate Tavakoli. Later, Tavakoli brought in Rashidi as a potential new partner in all three of Tavakoli's stores.

*Request for Fees*

After entry of judgment against Alamo, Tabaie moved for an award of attorney fees pursuant to section 2033.420, subdivision (a). Section 2033.420 provides: "(a) If a party fails to admit the genuineness of any document or the truth of any matter when requested to do so under this chapter, and if the party requesting that admission thereafter proves the genuineness of that document or the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. [¶] (b) The court shall make this order unless it finds any of the following: [¶] (1) An objection to the request was sustained or a response to it was waived under Section 2033.290. [¶] (2) The admission sought was of no substantial importance. [¶] (3) The party failing to make the admission had reasonable ground to believe that that party would prevail on the matter. [¶] (4) There was other good reason for the failure to admit."

Before trial, Tabaie asked Alamo to admit the following facts: (1) Tabaie and Alamo "never entered into a written agreement to form a limited liability company known as" Reno Investors; (2) Tabaie and Alamo "never entered into a written agreement at any time"; (3) Alamo "never agreed to loan [Tabaie] $500,000 so [Tabaie] could purchase inventory for a new furniture store that [Tabaie] was opening"; (4) Tabaie "never converted to his own use any of [Alamo's] personal property"; (5) Tabaie "never converted to his own use any of [Alamo's] assets"; and (6) Alamo is "not owed any money by" Tabaie. Alamo responded with a denial of these facts.

In his initial moving papers, Tabaie did not cite to the evidence he had submitted in proof of these facts at trial. Instead, he noted that the court had entered judgment in his favor against Alamo, and he argued that none of the exceptions provided under section 2033.420, subdivision (b) applied to the case. He argued that imposing a fee award would further the purpose of section 2033.420—to expedite or shorten trials— because "had plaintiff Alamo admitted the truth of [the] Request for Admission . . . that [Tabaie] did not owe Alamo any money, a trial would not have even been necessary in

4

this matter." He sought attorney fees for all of the time his attorney spent litigating the case from the date Alamo denied the requests for admissions, including time spent litigating the fee motion itself, for a total of $58,660 in fees.

In opposition, Alamo argued that Tabaie "conflates the Court's entry of judgment against [Alamo] on procedural grounds, i.e., [Alamo] was not a real party in interest, with a finding by the Court that [Tabaie] has proven the truth of the matters requested to be admitted. In fact, the Court has not made any findings of fact with respect to the dispute. [Tabaie's] motion for attorney's fees must therefore be denied because [Tabaie] did not prove the truth of the matters requested to be admitted." Alamo also argued the motion should be denied under section 2033.420, subdivision (b)(3) because Alamo had a reasonable ground to believe that it would prevail on the matter. "[Alamo] fervently argued, and still believes, that as the managing member of [Reno Investors] it was a real party in interest. [Tabaie] himself did not raise the issue until . . . the fourth day of trial. [Citation.] Moreover, the Court was not immediately convinced that [Alamo] was not a real party in interest . . . ."

In reply, Tabaie specifically argued that he had proved at trial that Alamo had never entered into a written agreement with him and that Alamo had never loaned him money, citing his attorney's cross examination of Gaube.[4] He also wrote, "[B]efore the Court ruled that Alamo was not the real party in interest, the Court ruled in favor of Tabaie on the breach of contract cause of action based on the testimony that the Court

---

[4] Tabaie cites the following testimony on appeal:

"Q. . . . [D]id plaintiff, Alamo, have any written contract with [Tabaie] at any time regarding [the furniture store property]?

"A. I don't believe so.

"Q. . . . And you're the representative of plaintiff Alamo . . .

"A. Yes. [¶] . . . [¶]

"Q. Do you know if plaintiff Alamo ever entered into any oral agreement or written contract with [Tabaie] regarding the . . . store?

"A. I don't believe so. [¶] . . . [¶]

"Q. Did plaintiff Alamo ever wire any funds into a bank account in the name of [Tabaie]?

"A. I don't believe so, no."

5

had heard during the trial. How can Alamo now claim that Tabaie did not prove that there was never any written agreement between Tabaie and Alamo?" Tabaie argued that Alamo had no reasonable ground to deny this fact or the fact that Alamo had never loaned Tabaie $500,000, which he argued had "nothing to do with whether Alamo was the real party in interest." Tabaie argued he had also proved at trial that he owed no money to Alamo and that he had never converted Alamo's property to his own use. He again suggested proof of these matters was implicit in the judgment entered in his favor and against Alamo. Tabaie asserted that "[i]It matters not that judgment was ultimately given to Tabaie based on the fact that Alamo was not a real party in interest—what matters is that the Court heard testimony and received evidence that proved the truth of those matters on which Tabaie is basing his motion far attorney's fees. It is indisputable that Tabaie proved the truth of all those matters during the trial."

The trial court denied the motion. "Defendant did not prove nor did this court find that he had proven the truth of the matters requested by [Tabaie] to be admitted by [Alamo]. It was not obvious to the Court until following trial, arguments, etc. that Alamo was not the real party in interest. It goes without saying that Alamo by filing the lawsuit and pursuing the matter through trial was of the same mind."

## II.    DISCUSSION

Tabaie argues the trial court erred in ruling both that he did not prove the truth of the matters denied by Alamo and that Alamo had good reason to deny the requests for admission. Tabaie has not provided a sufficient record for us to determine that the trial court erred in either respect.

If the trial court determines that facts denied in response to a request for admission were subsequently proved at trial and that none of the exceptions in section 2033.420, subdivision (b) apply, an award of fees is mandatory. (See *Haseltine v. Haseltine* (1962) 203 Cal.App.2d 48, 60 [discussing former §§ 2033, 2034, subd. (c)].) However, a trial court's determination that one or more of the exceptions applies is reviewed for abuse of discretion. (*Ibid.*; *Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500, 508 (*Brooks*).)

6

"It is a fundamental principle of appellate review that we presume that a judgment or order is correct. [Citations.] Moreover, it is the appellant's burden of providing a record that establishes error, and where the record is silent, we must indulge all intendments and presumptions to support the challenged ruling. [Citations.] From these principles, courts have developed the doctrine of implied findings by which the appellate court is required to infer that the trial court made all factual findings necessary to support the order or judgment. [Citations.]" (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1271–1272 (*Laabs*).) "Where the party fails to furnish an adequate record of the challenged proceedings, his claim on appeal must be resolved against him. [Citations.]" (*Rancho Santa Fe Assn. v. Dolan-King* (2004) 115 Cal.App.4th 28, 46.)

Here, Tabaie has not provided an adequate record to assess the trial court's alleged errors. Tabaie must establish on appeal both that he proved certain facts at trial and that Alamo had no reasonable grounds for denying those facts. Yet Tabaie has provided only a portion of one volume of the reporter's transcripts for the six-day trial leading up to entry of judgment against Alamo. Moreover, the parties' dispute about whether Alamo was the real party in interest in the action clearly affected the trial court's ruling on Tabaie's fee motion, yet Tabaie has included almost none of the proceedings on that issue in the record. The record includes neither the parties' written or oral arguments on the issue nor the court's oral or written statement of reasons for its decision the issue; it includes only the court's resulting order.

On this record, we cannot conclude that the trial court erred in ruling that Tabaie failed to prove the truth of the matters denied by Alamo. Tabaie cites testimony that appears to prove (or admit) the truth of at least some of those facts.[5] But we cannot

---

[5] We also note that Tabaie has here, as in the trial court, taken a full loaf or none position. He has made no attempt to apportion or allocate fees on discrete issues presented in the enumerated denials, and argues that he is entitled to fees "for all legal services rendered in this matter" after the date of the denials. A fee award is not a penalty, and is designed instead to reimburse reasonable expenses incurred by a party in proving the truth of a requested admission. (*Brooks, supra*, 179 Cal.App.3d at p. 509 [discussing fee awards under former § 2034, subd. (c)].) Section 2033.420,

7

assume the absence of any other evidence presented at trial that disproved those facts or prevented a finding that the matter was proved by a preponderance of evidence. As noted, Tabaie argued in the trial court that the court's ruling on Alamo's breach of contract claim necessarily implied a finding on the disputed facts in Tabaie's favor. There is a single reference in the register of actions to a statement by the court, after Tabaie moved for a nonsuit, that "[t]he court thinks pltf has failed to prove breach of contract/fiduciary duty claims." There is, however, *no* indication in the record of any subsequent ruling on that motion, no record of the hearing or the parties' arguments on the motion, and nothing in the court's ultimate decision or judgment which would allow us to draw that conclusion. The fact that the court instead permitted plaintiff to amend its complaint to properly identify the real party in interest, without any apparent limitation on the claims or causes of action to be asserted, would indicate otherwise.

In any event, even if we could conclude that the matters denied by Alamo *were* proved at trial based entirely on Gaube's testimony, we would not be able to conclude on this partial record that the trial court abused its discretion in holding that Alamo had reasonable grounds for denying the facts. "In evaluating whether a 'good reason' exists for denying a request to admit, 'a court may properly consider whether at the time the denial was made the party making the denial held a reasonably entertained good faith belief that the party would prevail on the issue at trial.' [Citation.]" (*Laabs, supra,* 163 Cal.App.4th at p. 1276.) The trial court apparently found Alamo reasonably (if ultimately unsuccessfully) took the position during trial that, as managing member of Reno Investors, it stood in the shoes of Reno Investors and had standing to sue. The partial record suggests that Tavakoli at one point claimed that Tabaie was his "partner" or his "agent" in the operation of the furniture store, that Tabaie met with Gaube at the store, and that Tabaie was providing Gaube with the income and payable statements of the store. Thus, the trial court might also have found that Alamo reasonably took the

---

subdivision (a) provides for "the reasonable expenses incurred in making . . . proof" of the denied facts.

8

position that Tabaie had at least some responsibility for Tavakoli's business liabilities. We do not suggest that these matters *are* established by the record before us. Rather, we simply cite *possible* inferences to illustrate why, in the absence of a complete record, we cannot conclude that the trial court abused its discretion in its implied ruling that Alamo had reasonable grounds for responding to Tabaie's requests for admission with denials.

Tabaie argues the trial court abused its discretion because it did not apply the appropriate legal standards to the question before it. To support this argument, he claims that Gaube's testimony (specifically, his testimony that Alamo had no written agreement with Tabaie) demonstrates that the trial court obviously erred when it ruled that Tabaie had not proven the denied facts at trial. As discussed *ante*, however, we do not find it obvious on this record that the cited fact was proven at trial by Tabaie. Tabaie also argues the trial court's discussion of the real party in interest issue demonstrates the court did not understand the question before it, because the real party in interest issue was irrelevant to the motion. Tabaie himself argued in the trial court that the good faith exception in section 2033.420, subdivision (b)(3) was not applicable because "[i]t was obvious that plaintiff Alamo was not the real party in interest in this matter and, not being the real party in interest, there were no reasonable grounds for Alamo to believe that it would prevail on the matters that were denied in the Requests for Admission . . . ." It is difficult for Tabaie to legitimately argue now that the issues were unrelated.

9

### III.   DISPOSITION

The order denying Tabaie's request for fees under section 2033.420 is affirmed. Tabaie shall pay Alamo's costs on appeal.

_____
Bruiniers, J.

We concur:

_____
Jones, P. J.

_____
Needham, J.